# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CANDELARIA CHAVEZ,

    Plaintiff,

vs.                                                           No. Civ. 97-0234 MV/WWD

KENNETH S. APFEL,[1]
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
**Proposed Findings**

    1.   This matter comes before the Court upon plaintiff's Motion to Reverse and Remand, filed December 17, 1997 [10-1].  The Commissioner denied plaintiff's request for Supplemental Security Income.  Plaintiff, age 52, alleges a disability which commenced June 18, 1991, due to hearing loss, cervical dysplasia, chronic back and neck pain, a full scale IQ of 81, and depression.

    2.   Ms. Chavez' first hearing before an Administrative Law Judge ("ALJ") was held on September 16, 1992.  Plaintiff appealed the unfavorable decision she received, and on November 7, 1995, another hearing took place before an ALJ upon remand from the United States District Court for the District of New Mexico.  The ALJ at this hearing found that Ms. Chavez does not have an impairment or combination of impairments that meet or equal the Listings; that she has

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J. Callahan, who was the appropriate party at the time of the underlying decision.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the residual functional capacity to perform work at the light or medium exertional level in simple, repetitive positions which involve one or two step operations in a low stress setting that entails working with objects rather than people and where good hearing is not necessary.

  3. The ALJ concluded that Ms. Chavez can perform her past relevant work, or in the alternative, that there are significant jobs in the national and regional economy that she can perform. The Appeals Council denied Ms. Chavez' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). Plaintiff has worked as a clothes hanger/linen room attendant and has completed eighth grade.

  4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id.

  5. Plaintiff alleges as grounds for error that the ALJ (1) failed to consider Ms. Chavez' impairments in combination at step three of the sequential evaluation; (2) failed to give proper weight to Ms. Chavez' psychological evaluation; and (3) erred by providing a defective hypothetical to the vocational expert.

  6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 1382c(a)(3)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 416.920.

The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

       7.   At the first four levels of the evaluation, the claimant must show:  (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

       8.   In the prior decision following the first hearing, the ALJ found that Ms. Chavez suffered from a severe cervical sprain and chronic back and neck pain.  However, the ALJ's decision after the first hearing was considered defective because no vocational expert was used in the step five inquiry to consider this impairment together with the additional nonexertional impairments of severe hearing loss and a mental impairment (full-scale IQ of 81).  Tr. at 219, 222.  On remand, the ALJ was directed to expand the record to include vocational testimony based on "all relevant factors including Ms. Chavez' combination of exertional and nonexertional impairments."  Tr. at 222.

       9.   Ms. Chavez last worked at a Thrift Center, as a floor clerk hanging clothes.  Tr. at 240.  She claims that arthritic pain in her hands, arms and neck keeps her from looking for work now.  She takes Ibuprofen for headaches which she gets sometimes every other day, and Zoloft which she started taking about a month and a half before the hearing.  The Ibuprofen upsets her stomach.  Tr. at 260, 262.  Plaintiff stated at the most recent hearing that she cannot sit or stand for longer than an hour, and cannot walk more than about two blocks.  Tr. at 241, 255-56.  She

said that she can climb stairs "if [she] had to," and can lift about five pounds. Ms. Chavez complained that she has trouble carrying a gallon of milk, and must use two hands. Yet she also stated that she does her own shopping and carries groceries into her house, where she lives with her 22 year-old daughter. Tr. at 254, 256.

  10. Ms. Chavez stated that she feels depressed and anxious because she can no longer do the things she used to, such as sewing and caring for her flowers. Tr. at 242, 250. She cannot sit through a movie unless she gets up and walks around. Tr. at 259. Nor does she have any hobbies or socialize much, except for visits from her boyfriend. She visits church two or three times a month, goes dancing with her boyfriend once or twice a month and attends bingo about once a month. Tr. at 244-45. She does some local driving to the store, does her own housework and some cooking, washes dishes, mops, sweeps, vacuums, dusts, and does her own laundry and ironing. Tr. at 250-51.

  11. Plaintiff is able to take care of her own grooming needs. She spends her days mostly sitting and thinking. Tr. at 259. Because she sleeps poorly, she finds she needs to nap 1 to 2 hours a day or else she feels very tired by 6:00 p.m. Tr. at 252, 258.

**First Alleged Error**

  12. Ms. Chavez claims that the ALJ failed to consider her impairments in combination at step three of the sequential evaluation. She further asserts that the simple use of the word "combination" is not sufficient to satisfy the ALJ's duty to conduct an analysis of the impairments in combination. However, I find that there was no deficiency in the ALJ's inquiry at step three and that the ALJ's decision accounted for all of plaintiff's alleged impairments and considered each of them carefully.

13. The ALJ's decision is methodical and meticulous in its analysis of plaintiff's various complaints and impairments as they relate to her ability to function in a work setting. Tr. at 203-04. The ALJ also inquired into the effects of several of the impairments at the November 1995 hearing. See e.g., Tr. at 239, 41, 242, 249, 250, 253-55, 256. This constitutes adequate consideration of the combined effect of plaintiff's impairments. See Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987); see also Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992) ("to require a more elaborate articulation of the ALJ's thought process would not be reasonable").

**Second Alleged Error**

14. Plaintiff next alleges that the ALJ failed to give proper weight to Ms. Chavez' psychological evaluation by Dr. Bradshaw. Tr. at 19-25. The ALJ found that plaintiff's low to borderline IQ and depression did not present a significant restriction on her ability to work. Plaintiff argues that the inconsistencies seen by the ALJ between this report and the attached mental assessment to do work-related activities, Tr. at 26-27, renders the ALJ's findings erroneous.

15. The ALJ has the ability to resolve conflicts in the medical evidence. Richardson v. Perales, 402 U.S. 389, 399 (1971); Casias v. Sec'y of Health & Hum. Serv., 933 F.2d 799, 801 (10th Cir. 1991). This is exactly what the ALJ did, making clear that he was also relying on the "evidence of record" as well as Dr. Bradshaw's report in coming to his conclusions. Tr. at 204. Further, the preceding pages in the ALJ's decision were devoted to an examination of the reports dealing with plaintiff's various impairments. Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983) (substantiality of the evidence is based upon the record taken as a whole).

16. The ALJ examined and discussed all reports dealing with Ms. Chavez' complaints of musculoskeletal pain (arms, neck, back), starting with the early reports even before plaintiff was taking Ibuprofen to relieve the pain. Tr. at 201. For example, plaintiff was noted to have mild arthritic changes in the lumbosacral spine with no abnormalities which would explain chronic low back pain except for muscle spasm and a decreased exercise level. Tr. at 178-80. No functional limitations resulted as a result of the impairment, except for pushing and pulling. The ALJ also took into account chiropractic notes and medical treatment notes from visits in 1991 and 1993. Recommended treatment was conservative and included physical therapy, although the ALJ noted that there was no indication that plaintiff had followed through with this. Tr. at 202.

17. The ALJ likewise looked into Ms. Chavez' other impairments. Her gynecological condition posed some significant problems for a time, including a period prior to the alleged onset date. However, following a course of intensive treatment for mild to moderate cervical dysplasia,[2] the problem was resolved and has resulted in no restrictions or complaints except for what plaintiff stated were "excessive absences" from work at the time of acute treatment. Tr. at 202, 135-151.

18. Ms. Chavez has a mild to profound sensorineural loss in both ears, for which she uses a hearing aid. The cosmetic implications of a body-type aid discouraged her from using one, although it was recommended as most effective. Tr. at 203, 152-53. Also, plaintiff regularly uses only one hearing aid, even though two were recommended for maximum benefit. Tr. at 154. In his April 1992 disability report, Dr. Hutchinson noted that Ms. Chavez can hear "normal spoken

---

[2] Plaintiff had other gynecological conditions requiring treatments, such as vaginitis, but the dysplasia appears to have been the most serious.

conversation" with her aids.  Tr. at 162.

19.  Considering the findings in these reports, the ALJ's resolutions of the few inconsistencies regarding Dr. Bradshaw's mental assessment were justified and based on substantial evidence.  The ALJ followed the directive of the district court to consider plaintiff's exertional and nonexertional impairments, particularly the mental impairment (intellectual deficiencies).  In completing the psychiatric review technique form ("PRTF"), he concluded that plaintiff had a "slight" restriction of activities of daily living or "moderate" difficulty maintaining social functioning with some limitations on her capacity to interact with others.  Tr. at 205.  He found that she does suffer from deficiencies in concentration, persistence and pace.  Tr. at 209-212.

20.  The ALJ did not consider plaintiff's depression to pose a significant limitation.  He noted from Dr. Bradshaw's report that plaintiff suffered from situational depression resulting from having no job, poor finances and children who were not making good decisions.  Dr. Bradshaw opined that these symptoms were amenable to counseling and possible anti-depression medication.  Tr. at 24, 204.

21.  Plaintiff makes much of the ALJ's maintaining that Dr. Bradshaw felt that "claimant's physical complaints had a psychological component" while at the same time finding that "the record fails to document significant complaints or findings associated with a musculoskeletal . . . condition."[3]  I see nothing out of sorts here.  The ALJ did not ignore or discount the

---

[3] What the ALJ had actually found after the first hearing was that plaintiff had a "severe impairment of cervical sprain with radiculitis and chronic back and neck pain but that she could perform a full range of sedentary work."  Tr. at 219 (Magistrate's Proposed Findings and Recommended Disposition).

musculoskeletal pain, but simply found that it was not enough to pose significant problems. Plaintiff also infers a failure to consider the impairments (here, the musculoskeletal and mental) in combination. I have already discussed this above and have found that the ALJ appropriately and sufficiently addressed this issue.

22. Thus, plaintiff's second alleged error fails. Notwithstanding the inconsistences between Dr. Bradshaw's report and the mental assessment form, the ALJ's findings regarding plaintiff's mental impairment were based on substantial evidence and according to the proper legal standard.

**Third Alleged Error**

23. Last, plaintiff claims that the ALJ erred by providing a defective hypothetical to the vocational expert. The ALJ presented the vocational expert ("VE") with three hypotheticals. Hypotheticals presented to the VE must adequately reflect the state of the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993); Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991). The first hypothetical assumed a residual functional capacity to perform light work, with restrictions of low stress, simple repetitive tasks, work with things rather than people and not requiring good hearing. Tr. at 264-65. The VE came up with several occupations in the laundry industry (checker and folding machine operator), electronics worker and ticket taker.

24. The second hypothetical reduced the residual functional capacity to sedentary work, with the same restrictions. The VE stated that jobs of stone setter and jewelry preparer were available in the national economy. Tr. at 266. The last hypothetical added the limitation of requiring a 1 to 2-hour daily nap. Not surprisingly, the VE said that this would probably eliminate all jobs. Tr. at 267.

25. Plaintiff would argue that this last hypothesis, essentially determining that plaintiff could not work at all because she needed a 2 hour nap on a daily basis, should have applied to plaintiff because the ALJ did not make a credibility determination.  I can only assume that plaintiff's position rests solely on the fact that the ALJ did not use the magic word "credibility" in his decision.  I assume this because it seems otherwise very clear to me that the ALJ did conduct a credibility analysis and did make a credibility determination in his otherwise thorough examination of the issues.  Tr. at 267.

26. As discussed above, the ALJ discussed the evidence and made findings as to each of plaintiff's impairments in view of any limitations it might impose on her ability to work.  This discussion also served as a basis for a credibility determination.  An arguable deficiency in opinion-writing technique (if one regards omitting the word "credibility" as a deficiency) is not a sufficient reason for setting aside an administrative finding where, as here, the deficiency has no practical effect on the outcome of the case.  See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

27. Here, the ALJ used the proper legal standard as set out in Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).  Having found that a loose nexus existed between Ms. Chavez' complaints of pain and some of the objective medical evidence, he followed it through by examining findings relating to plaintiff's various impairments,[4] considered plaintiff's subjective complaints and finally concluded that he did not "grant significant weight to the claimant's

---

[4] The ALJ discussed, in turn, Ms. Chavez' arthritis, musculoskeletal pain, gynecologic condition, hearing loss and intellectual impairment.

complaints of pain." Tr. at 201-202, 204-05, 207.[5] These findings were sufficiently based on the legal rules being applied. Ryan v. Heckler, 762 F.2d 939 (11th Cir. 1985) (ALJ must state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered).

28. Plaintiff contends that the hypotheticals presented to the VE were deficient because none included the ALJ's own finding regarding difficulties in concentration, persistence and pace. The VE stated that a deficiency in this area could negatively affect a position as a jewelry or electronics worker, but not as a laundry worker. Tr. at 269. The ALJ concluded that plaintiff could perform as an electronics worker, thus arguably disregarding his own finding. However, he also cited plaintiff's ability to work as a laundry worker, which was *not* affected by deficiencies in concentration, persistence and pace. Tr. at 269. This error is therefore *de minimis*.

29. Plaintiff also argues that past relevant work as a "clothes hanger" is not substantial gainful activity because it required very limited duties and is not listed as such in the Dictionary of Occupational Titles ("DOT"). Here, the VE considered the duties performed by the plaintiff and came up with the titles of linen room or uniform attendant as similar occupations. Tr. at 264. Under regulations, ALJ may take notice of administrative job data such as the DOT. 404.1566(d); Campbell v. Bowen, 822 F.2d 1518, 1523 n.3 (10th Cir. 1987).

30. I find nothing in the regulations that state or imply that a job cannot be considered substantial gainful activity if it is not listed in the DOT under a particular name. Cmp. Legget v. Chater, unpubl. op., 77 F.3d 492, 1996 WL 71746, *3 (10th Cir. Okla) (inquiry involved an

---

[5] The ALJ did not make a specific credibility determination solely on Ms. Chavez' need to nap, but did focus considerable attention on it at the hearing. Tr. at 252, 258-59. Because plaintiff slept poorly at night, she was not able to retire at her usual 10:00 p.m. bedtime if she did not nap, but rather felt tired much earlier in the evening.

examination of the duties described in those occupations which most closely matched the past relevant work claimant had performed). The critical issue is whether a proper step four analysis was conducted.

31. At step four, the ALJ engages in a comparative assessment of the claimant's residual functional capacity and the demands of the work the claimant has done in the past to determine whether the claimant can do her past relevant work. Hinkle v. Apfel, 132 F.3d 1349 (10th Cir. 1997); 132 F.3d 1349 (10th Cir. 1997); see 20 C.F.R. S 1520(e).

32. I find that the restrictions posed in the various hypotheticals included the impacts of plaintiff's impairments and thus satisfied a proper step four analysis. On cross-examination, plaintiff's counsel added restrictions of a slightly more severe nature, such as a "less than satisfactory" ability to understand, remember and carry out simple job instructions. Tr. at 271. I do not address these, since I find that the ALJ's determinations regarding the severity of plaintiff's limitations are based on substantial evidence. On the other hand, I note that other limitations posed by plaintiff's counsel, e.g., IQ in low 80's and "less than satisfactory" ability to function independently, would have no negative impact on plaintiff's ability to perform the occupations listed, according to the VE. Tr. at 270, 271.

33. In sum, I find that the ALJ: (1) adequately considered Ms. Chavez' impairments in combination at step three of the sequential evaluation; (2) gave proper weight to Ms. Chavez' psychological evaluation by Dr. Bradshaw; and (3) provided hypotheticals to the VE which adequately reflect the state of the record.

**Recommendation**

I recommend that plaintiff's Motion to Reverse and Remand [10-1] be denied and that this

cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

                                                           UNITED STATES MAGISTRATE JUDGE